# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Mary T. Thomas, Nea Richard, Jeremy Rutledge, The Family Unit, Inc., and South Carolina State Conference of the NAACP, | Civil Action No.: 3:20-cv-01552-JMC |
| Plaintiffs, | |
| v. | |
| Marci Andino, as Executive Director of the State Election Commission, John Wells in his official capacity as Chair of SC State Election Commission, and Clifford J. Edler, Scott Moseley, JoAnne Day, and Linda McCall in their official capacities as Members of the South Carolina State Election Commission, | **ORDER AND OPINION** |
| Defendants, | |
| v. | |
| South Carolina Republican Party, | |
| Intervenor. | |

Plaintiffs Mary T. Thomas, Nea Richard, Jeremy Rutledge, The Family Unit, Inc., and South Carolina State Conference of the NAACP (collectively, "Plaintiffs") filed this action seeking declaratory and injunctive relief from certain voting requirements promulgated by the State of South Carolina. (ECF No. 1 at 1-5 ¶¶ 1-12.)

Currently before the court are two separate Motions to Intervene: the first filed by South Carolina House of Representatives Speaker Jay Lucas ("Speaker Lucas"), and the second filed by South Carolina Senate President Harvey Peeler ("President Peeler") (collectively, "Proposed

1

Intervenors"). (ECF Nos. 115, 116.) Plaintiffs filed briefing in opposition to the Motions to Intervene (ECF No. 134), to which President Peeler filed a reply (ECF No 138).

For the reasons below, the court **GRANTS** both Motions to Intervene. (ECF Nos. 115, 116.) The court further **ORDERS** that Speaker Lucas and President Peeler are subject to the expedited scheduling order previously entered by the court (ECF No. 67) and **ORDERS** Speaker Lucas and President Peeler to submit any potential responsive briefing to currently pending motions (ECF Nos. 106, 108, 109) by 5:00 p.m. on August 26, 2020.

## I.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

"The COVID-19 pandemic, also known as the coronavirus pandemic, is an ongoing pandemic of coronavirus disease ('COVID-19') caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2)." *COVID-19 pandemic*, https://en.wikipedia.org/wiki/COVID-19_pandemic (last visited August 20, 2020). The COVID-19 virus is primarily spread by "direct, indirect (through contaminated objects or surfaces), or close contact with infected people via mouth and nose secretions. These include saliva, respiratory secretions or secretion droplets." *Q&A: How is COVID:19 transmitted?*, WORLD HEALTH ORGANIZATION, https://www.who.int/emergencies/diseases/novel-coronavirus-2019/question-and-answers-hub/q-a-detail/q-a-how-is-covid-19-transmitted (last visited August 20, 2020). As of August 23, 2020, the United States had reported more than 5.6 million cases resulting in 175,651 deaths. *Cases and Deaths in the U.S.*, CTRS. FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/us-cases-deaths.html (last visited August 20, 2023).

On April 22, 2020, Plaintiffs filed a Complaint for Injunctive and Declaratory Relief against Defendants Marci Andino, John Wells, Clifford J. Edler, Scott Moseley, JoAnne Day, and

Linda McCall (collectively, "Defendants").[1] (ECF Nos. 1, 76.) Primarily due to the COVID-19 pandemic, Plaintiffs challenge South Carolina's current laws related to absentee voting, including the categories of individuals authorized to vote by absentee ballot and the requirement that another person witness and sign the absentee ballot envelope ("Challenged Provisions"). (ECF No. 76 at 1-6 ¶¶ 1-12.) Plaintiffs further allege the Challenged Provisions disproportionately impact South Carolina's African-American population. (*Id.* at 3-4 ¶ 6.)

On August 12, 2020, Speaker Lucas and President Peeler filed their respective Motions to Intervene as a matter of right under Federal Rule of Civil Procedure 24(a), or alternatively with the court's permission under Federal Rule of Civil Procedure 24(b)(1). (ECF Nos. 115, 116.) Speaker Lucas seeks to intervene "to defend the South Carolina statutes under examination or otherwise respond to the issues of public importance raised by this case." (ECF No. 115 at 1.) President Peeler similarly requests intervention because of his "interest in upholding South Carolina's constitutional structure, as well as its election laws . . . ." (ECF No. 116 at 4.) Plaintiffs responded in opposition to these motions on August 21, 2020. (ECF No. 134.) Neither Defendants nor Intervenor South Carolina Republican Party have stated a position as to the merits of the pending Motions to Intervene.

## II.     JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331. Plaintiffs assert claims against Defendants under 42 U.S.C. § 1983, which permits an injured party to bring a civil action against a person who, acting under color of state law, ordinance, regulation, or custom, causes the injured party to be deprived of "any rights, privileges, or immunities secured by the

---

[1] Defendants JoAnne Day and Linda McCall were added by Amended Complaint on July 13, 2020. (ECF No. 76.) The court has also granted the South Carolina Republican Party's request to intervene in this case. (ECF No. 39.)

3

Constitution and laws." *Id.* Specifically, Plaintiffs allege violations of their rights based on the First and Fourteenth Amendments of the United States Constitution; the Voting Rights Act of 1965, 52 U.S.C. § 10301; the Americans with Disabilities Act, 42 U.S.C. §§ 12131, *et seq.*; and 42 U.S.C. § 1983. (ECF No. 76 at 48, 49, 51).

### III.     LEGAL STANDARD

Individuals or organizations may seek intervention under Rule 24 in two ways: by right or with the court's permission. FED. R. CIV. P. 24(a)(2), (b)(1). Regardless of the type of intervention sought, a movant must initially show the application was filed in a timely manner. *Alt v. U.S. E.P.A.*, 758 F.3d 588, 591 (4th Cir. 2014); *see N.C. State Conference of NAACP v. Berger*, No. 19-2273, 2020 WL 4727277, at *7 n.6 (4th Cir. Aug. 14, 2020).

To intervene as a matter of right, the potential intervenor "must show that (1) [he] has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." *N.C. State Conference of NAACP*, 2020 WL 4727277, at *7 (citing *Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir. 1981)); FED. R. CIV. P. 24(a)(2); *see Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999); *cf. Feller v. Brock*, 802 F.2d 722, 729 (4th Cir. 1986) (noting that "liberal intervention is desirable to dispose of as much of a controversy involving as many apparently concerned persons as is compatible with efficiency and due process") (citation and internal marks omitted). Failure to satisfy even one requirement results in the denial of intervention by right. *See NAACP v. New York*, 413 U.S. 345, 369 (1973). The party seeking to intervene "bears the burden of demonstrating . . . a right to intervene." *S.C. Coastal Conservation League v. Pruitt*, No. 18-CV-330-DCN, 2018 WL 2184395, at *3 (D.S.C. May 11, 2018) (citation omitted).

Alternatively, the court may grant a movant's request to intervene permissively. *See* FED. R. CIV. P. 24 (b)(1). The following factors are relevant when deciding a motion for permissive intervention: "[1] the presence of a common question of law or fact; and [2] whether the intervention will unduly delay or prejudice the original parties." *Savannah Riverkeeper v. U.S. Army Corps of Eng'rs*, No. CV 9:12-610-RMG, 2012 WL 13008326, at *2 (D.S.C. Aug. 14, 2012) (citing *Backus v. South Carolina*, No. 3:11-cv-03120-HFF-MBS-PMD, 2012 WL 406860, at *2 (D.S.C. Feb. 8, 2012)); *see N.C. State Conference of NAACP*, 2020 WL 4727277, at *12; *but see S.C. Coastal Conservation League*, 2018 WL 2184395, at *3 (adding another prong that "there must be an independent ground of subject matter jurisdiction") (citing *Shanghai Meihao Elec., Inc. v. Leviton Mfg. Co.*, 223 F.R.D. 386, 387 (D. Md. 2004)). "Permissive intervention [under Rule 24(b)] is left to the broad discretion of the [c]ourt and should be construed liberally in favor of intervention." *Savannah Riverkeeper*, 2012 WL 13008326, at *2.

### IV.     ANALYSIS

Speaker Lucas and President Peeler argue they should be allowed to intervene by right, or instead through permissive intervention. (ECF Nos. 115 at 1-2; 116 at 2.) Plaintiffs counter that intervention is untimely and the Proposed Intervenors' requests do not meet the requirements of intervention by right or permission. (ECF No. 134 at 1, 4-9.) For the following reasons, the court grants both Motions to Intervene.

A. <u>Timeliness</u>

The court begins by analyzing whether the Motions to Intervene are timely. The court must examine three factors to discern the timeliness of an application: "[1] how far the underlying suit has progressed; [2] the prejudice any resulting delay might cause the other parties; and [3] why the movant was tardy in filing its motion." *Alt*, 758 F.3d at 591.

The Proposed Intervenors insist their applications are timely by emphasizing this case was filed less than four months ago. Speaker Lucas further explains he did not seek intervention earlier because of his involvement with other related legal challenges to South Carolina's laws on absentee voting (ECF No. 115 at 4-5), while President Peeler stresses intervention be allowed because no elected official is currently a party to the litigation (ECF No. 116 at 4). In opposition, Plaintiffs challenge each factor for timeliness. While Plaintiffs concede the case is only a few months old, they nonetheless claim the case has progressed to an advanced stage. (ECF No. 134 at 3.) Plaintiffs further warn that allowing the Proposed Intervenors to join the case at this stage would cause prejudicial delay. (*Id.* at 4.) Lastly, Plaintiffs observe neither Speaker Lucas nor President Peeler have offered a legitimate reason for their allegedly tardy motions. (*Id.* at 3.)

Here, the first timeliness factor weighs in favor of the Proposed Intervenors. Plaintiffs brought their initial Complaint on April 22, 2020, and the Proposed Intervenors filed their respective Motions to Intervene under four months later. There has indeed been a litany of activity in this case, yet the court believes litigation has not yet advanced so far as to render requests for intervention as untimely.

The second factor similarly favors the Proposed Intervenors. While it is true Plaintiffs (and the court) would be required to complete additional work after intervention, such delays are mitigatable. The Proposed Intervenors have agreed, and are now ordered, to follow the court's expedited scheduling order. (ECF No. 67.) The dispositive motions deadline passed on August 10, 2020 (*Id.*), which forecloses any new dispositive motions potentially filed by the Proposed Intervenors. Discovery has likewise closed and will not be reopened. (*Id.*) Moreover, the court orders the Proposed Intervenors to submit briefing on any currently pending motions by 5:00 p.m. on Wednesday, August 26, 2020, thereby further reducing delay.

Relatedly, any prejudicial delay stemming from the Proposed Intervenors' participation at trial does not outweigh their right to be heard. *Park v. McCabe Trotter & Beverly, P.C.*, No. 2:17-CV-657-RMG, 2018 WL 3543526, at *3 (D.S.C. July 23, 2018) (explaining the prospect of having "to spend time and effort responding" to a potential intervenor did not outweigh the movant's right to be heard). Plaintiffs fulminate that intervention "would present an enormous challenge in a trial that is already on a tight three-day schedule," primarily due to "two more lawyers . . . examining every witness and presenting new evidence . . . ." (ECF No. 134 at 4.) The court finds such challenges do not amount to "irreparabl[e] prejudice[]" (*Id.*), and instead may be effectively managed within the current trial schedule without substantial difficulty.

The court observes it shall not continue the dispositive hearings motion set for August 31, 2020, or the trial set for September 22, 2020, due to intervention. The court issued an expedited scheduling order and set a September 2020 trial date in part because the case's legal issues concern voting requirements for the impending November 3, 2020 South Carolina elections. (ECF No. 67.) Further narrowing the gap between trial and elections could negatively impact how efficiently the court's potential rulings are implemented, in turn leading to inefficiencies in election administration and confusion among voters. Delaying the dispositive hearings motion would similarly compress an already tight timeline. Thus, despite intervention, the court shall not issue continuances on these matters.

Lastly, the third factor favors Plaintiffs. The Proposed Intervenors admit they seek intervention because of developments concerning other litigation and the voluntary dismissal of Governor Henry McMaster from this action. Specifically, President Peeler claims such developments created new "issues of federalism and abstention" that now require his intervention to be properly defended. (ECF No. 138 at 6.) But the court is not convinced. Instead, it seems the

7

Proposed Intervenors could have sought to intervene at any prior time but made a strategic decision to wait. *Alt*, 758 F.3d at 591-92 (finding a "strategic decision not to devote . . . limited resources to [a] matter at an earlier stage" due to an expected dismissal did not excuse a tardy request to intervene).

Having considered the three factors, the court finds the Proposed Intervenors' applications are timely. While the Proposed Intervenors could have sought intervention earlier, the case has not yet progressed to an advanced stage and the weight and type of possible prejudice is not so great as to bar intervention for untimeliness. Furthermore, the court has ordered the Proposed Interveners be subject to the court's expedited scheduling order and submit any potential responsive briefing to pending motions by 5:00 p.m. on Wednesday, August 26, 2020. The court again notes no continuances shall be granted for the August 31, 2020 dispositive motions hearing date and September 22, 2020 trial date due to intervention.

B.  Intervention as a Matter of Right

The court next examines whether the Proposed Intervenors may intervene by right. The Proposed Intervenors argue their interests in the case stem from their unique insights into, and desire to constitutionally uphold, the Challenged Provisions. (ECF Nos. 115 at 6; 116 at 4.) They claim their interests would be impaired without intervention because "the legislative branch of South Carolina government . . . is endowed with the responsibility of enacting the laws of the state" and they "will be unable to support the constitutionality of the provisions at issue" if not allowed to join. (ECF No. 115 at 7.) The Proposed Intervenors both note their interests are not adequately represented by the current parties, because entities who do not promulgate policies or laws have their "own separate and distinct interests in this litigation." (*Id.* at 8.) President Peeler adds that "none [of the current parties] are charged with defending the constitutionality of state

8

laws or the political judgments and processes of the South Carolina General Assembly." (ECF No. 116 at 5-6.) Lastly, the Proposed Intervenors highlight a South Carolina statute purportedly authorizing their intervention in federal cases that challenge the constitutionality of a state statute. (ECF Nos. 115 at 6; 116 at 6.) They point to a North Carolina law for support, which the Fourth Circuit recently found impacted the analysis of intervention by right for North Carolina legislators.

In response, Plaintiffs argue "[t]he mere fact that legislation is challenged does not give legislators a right to intervene." (ECF No. 134 at 5.) Plaintiffs further conclude the Proposed Intervenors have not met the "strong showing" required to prove the current parties are inadequate. (*Id.* at 7-8.) Lastly, Plaintiffs posit the South Carolina statute does not bestow a right to intervention upon state legislators. (*Id.* at 6.)

Here, the court finds the Proposed Intervenors have not met the requirements to intervene by right. In essence, the Proposed Intervenors seek intervention by right due to their status as legislators within South Carolina's General Assembly. But such status alone does not meet the requirements to intervene as a matter of right. *S.C. Elec. & Gas Co. v. Whitfield*, No. 3:18-CV-01795-JMC, 2018 WL 3470660, at *3 (D.S.C. July 18, 2018) (explaining Speaker Lucas' interest in defending the constitutionality of a challenged state statute did not mandate intervention by right) (citing *One Wis. Institute, Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015)); *Roe v. Casey*, 464 F. Supp. 483, 486 (E.D. Pa. 1978) (similar); *compare with Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 105-06 (E.D.N.Y. 1996) (finding a legislator had an interest in upholding a state statute's constitutionality, but denying intervention by right because the current parties adequately protected the legislator's interest).

Moreover, while the Proposed Intervenors would have a stronger claim if the executive branch abandoned the defense of the Challenged Provisions, the executive has not done so:

9

Defendants are employees of an executive agency and were sued in their official capacity. *S.C. Elec. & Gas Co.*, 2018 WL 3470660, at *4 (stating "legislators have an interest in defending the constitutionality of legislation passed by the legislature when the executive declines to [defend the constitutionality of the legislation]") (quoting *Fisher-Borne v. Smith*, 14 F. Supp. 3d 699, 703 (M.D.N.C. 2014) (internal quotation marks omitted)).

Additionally, the South Carolina statute cited by the Proposed Intervenors does not mandate intervention by right. The statute at issue explicitly bestows the Proposed Intervenors "an unconditional right to intervene . . . in a *state court* action" for, among other reasons, constitutional challenges to state law. Gen. Appropriations Bill for Fiscal Year 2019-2020, H. 4000, 123rd Sess. § 91.26 (2019) (emphasis added). However, for state constitutional challenges in federal court, "the Legislature may seek to intervene, to file an amicus brief, or to present argument in accordance with the federal rules of procedure." *Id.* The phrase "may seek to intervene" in a federal action, in contrast to the preceding statutory language that creates an explicit right to intervene in state proceedings, convinces the court that the South Carolina General Assembly did not intend to create a wholly new right for state legislators to intervene in state constitutional challenges before a federal court.

South Carolina's law is distinguishable from the North Carolina statutory language recently discussed by the Fourth Circuit. In *N.C. State Conference of NAACP v. Berger*, the Fourth Circuit examined how the language of N.C. Gen. Stat. 1-72.2 could impact the outcome of a North Carolina legislator's request to intervene by right. 2020 WL 4727277, at *7-13. The Fourth Circuit found the North Carolina law expressed legislators' subject-matter interest by explicitly naming

10

legislators as agents of the State and granting standing[2] for legislators to intervene in *any* judicial proceeding in which state law is constitutionally challenged. *Id.* at *8 (emphasis added); *see* N.C. Gen. Stat. § 1-72.2 (2017). The Fourth Circuit also discussed whether such an interest would be impaired without intervention and explained the statutory language at issue showed the legislature's desire for legislators to intervene in constitutional challenges. *N.C. State Conference of NAACP*, 2020 WL 4727277, at *11-12. Implicit in that desire, the Fourth Circuit added, was the state's belief it would not be adequately represented by the current parties. *Id.* at 12. Ultimately, the case was remanded for the lower court to specifically examine the statute in its analysis. *Id.*

Here, however, the South Carolina statute at issue differs in key respects. The South Carolina law does not outline a legislator's subject-matter interest in defending state constitutional challenges in federal court, while the North Carolina law does so. *Id.* at *8; *see* N.C. Gen. Stat. § 1-72.2 (2017). The South Carolina law allows legislators to simply "seek" intervention under the federal rules; the North Carolina law overtly requests the presiding federal court "to allow both the legislative branch and the executive branch" to intervene. N.C. Gen. Stat. § 1-72.2. The South Carolina law's permissive, less-authoritative language suggests a lower concern that legislators' potential interests will not be adequately represented by the current parties; the North Carolina law's more-imposing language suggests the opposite. Accordingly, the South Carolina's statute is distinguishable from the statutory language analyzed in *N.C. State Conference of NAACP* and, as a consequence, is not as impactful on the court's analysis of intervention by right.

---

[2] The court notes a state legislature cannot "automatically establish[] Article III standing" because standing "is an issue for the federal courts to decide." *See N.C. State Conference of NAACP*, 2020 WL 4727277, at *5.

In short, after a thorough review, the court finds the Proposed Intervenors have not met the requirements to intervene as a matter of right. Their respective requests to intervene by right are therefore denied.

C. <u>Permissive Intervention</u>

The court next turns to permissive intervention. The Proposed Intervenors essentially rely on arguments made in support of intervening by right. As noted above, the Proposed Intervenors have agreed to follow the current scheduling order (ECF Nos. 115 at 9; 116 at 7) and the court has limited the Proposed Intervenors' time to respond to pending motions. In response, Plaintiffs again present the Motions to Intervene as untimely and conclude, if granted, the Proposed Intervenors "would substantially prejudice Plaintiffs' rights." (ECF No. 134 at 8.)

Here, after carefully considering the relevant factors, the court allows the Proposed Intervenors to intervene permissively. The Proposed Intervenors' interests in the constitutionality of the Challenged Provisions present questions of law or fact common to Plaintiffs' Amended Complaint. Specifically, Plaintiffs seek declarative and injunctive relief that the Challenged Provisions are unconstitutional, while the Proposed Intervenors seek to prove the constitutionality of the Challenged Provisions. And as discussed above, intervention will not unduly delay or prejudice the original parties. Coupled with the liberal policy allowing intervention, the court thus finds the Proposed Intervenors should be allowed to permissively intervene in this case.[3]

### V.     CONCLUSION

For the reasons stated above, the court **GRANTS** Speaker Lucas' Motion to Intervene under Rule 24(b) (ECF No. 115) and **GRANTS** President Peeler's Motion to Intervene under Rule

---

[3] Lastly, although President Peeler did not attach a proposed pleading, the court declines to enforce strict compliance with Rule 24(c) in this instance. *Cf. Park*, 2018 WL 3543526, at *2 (citations omitted).

24(b) (ECF No. 116).  The court further **ORDERS** that Speaker Lucas and President Peeler are subject to the expedited scheduling order previously entered by the court (ECF No. 67) and **ORDERS** Speaker Lucas and President Peeler to submit any potential responsive briefing to currently pending motions (ECF Nos. 106, 108, 109) by 5:00 p.m. on August 26, 2020.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

August 24, 2020
Columbia, South Carolina