IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Mary T. Thomas, Nea Richard, Jeremy Rutledge, The Family Unit, Inc., and the South Carolina State Conference of the NAACP<br><br>Plaintiffs,<br><br>vs.<br><br>Marci Andino, as Executive Director of the State Election Commission, John Wells in his official capacity as Chair of SC State Election Commission, and Clifford J. Edler, Scott Moseley, JoAnne Day, and Linda McCall in their official capacities as Members of the South Carolina State Election Commission,<br><br>Defendants,<br><br>and<br><br>South Carolina Republican Party, James H. Lucas, in his official capacity as Speaker of the South Carolina House of Representatives, and Harvey Peeler, in his official capacity as President of the South Carolina Senate,<br><br>Intervenor-Defendants. | Civil Action No. 3:20-cv-01552-JMC<br><br><br><br><br><br><br><br>AFFIDAVIT AND PROFFER OF EVIDENCE |

The undersigned, first been duly sworn, states under the penalty of perjury as follows:

1. I am Lt. Pete Logan, and I have personal knowledge of the facts set forth in this Affidavit and Proffer of Evidence.

2. I work as an agent for the South Carolina Law Enforcement Division ("SLED"). I have lived in South Carolina since 1965, and I currently reside in Irmo, South Carolina.

1

3. I have worked as an agent for SLED for over 30 years. Prior to joining SLED, I worked as an agent with the Federal Bureau of Investigation ("FBI") for approximately 28 years.

4. During my career with the FBI, I worked on many different types of investigations in many different states.

5. As part of my job at SLED, I am assigned to the state grand jury, and I am the SLED lieutenant responsible for supervising state grand jury agents. In my role, I and the agents I supervise conduct investigations into various criminal matters, including cases involving allegations of voter or election fraud in South Carolina.

6. From my experience investigating allegations of absentee voter fraud and because I have voted absentee myself, I am familiar with the mechanics of absentee voting in South Carolina from a voter's perspective.

7. Qualified absentee voters in South Carolina receive from their County Board of Voter Registration an envelope containing, among other things, instructions for absentee voting, an absentee ballot, a "BALLOTS HEREIN" envelope (sample attached as **Exhibit A**) and a return-mail envelope (sample attached as **Exhibit B**).

8. After voting their ballot, the absentee voter places the completed ballot(s) in the "BALLOTS HEREIN" envelope which is then placed inside the return-mail envelope which is sent to the applicable County Board of Voter Registration.

9. The back of the return-mail envelope includes a block for the absentee voter's name and address, the Voters Oath, a signature/date block for the voter, and a signature/address block for the Witness. The Voters Oath reads as follows:

> Voters Oath
>
> I hereby swear (or affirm) that I am duly qualified to vote at this election according to the Constitution of the State of South Carolina; that I have not voted during this

election; and that the ballot or ballots with which this oath is enclosed is my ballot and that I have received no assistance in voting my ballot that I would not have been entitled to receive had I voted in person.

10. Elections are sometimes hotly contested, and tensions can run high between candidates and their supporters. A disappointing outcome on election night can lead to allegations of misconduct or fraud that may or may not prove to be true. Often, the public is left to wonder whether such allegations are credible or whether they are nothing more than retaliation from a sore loser.

11. An important goal of any criminal investigation is to determine the facts and evaluate whether a crime has been committed. However, finding the truth, not an indictment or a conviction, is the ultimate goal of any investigation. Some investigations of alleged absentee vote fraud reveal evidence that leads to criminal prosecutions and/or convictions. When a case is prosecuted and a conviction is secured, the public is able to evaluate the facts presented at trial and, to the extent they agree with the jury's conclusion, the conviction serves to deter others from similar misconduct. The conviction also gives voters confidence in the fairness and integrity of the election process.

12. It is important to note that, even when a criminal investigation of vote fraud allegations does not lead to prosecution or a conviction, an important law enforcement interest nevertheless is served. A decision not to bring charges in response to fraud allegations informs the public that law enforcement could not substantiate the allegations sufficiently to justify prosecution. Such a conclusion, to the extent the public agrees with it, promotes confidence in the integrity of the election out of which the fraud allegations arose.

13. Similarly, when a defendant is acquitted of vote fraud allegations, his/her exoneration also promotes confidence in the integrity of the election process, because, to the

extent the public is aware of the evidence presented and concurs in the jury's verdict, confidence in the integrity of the election process is encouraged. Thus, regardless of the outcome of an investigation into vote fraud allegations, the investigatory process helps establish the truth and, in so doing, promotes voter confidence in the integrity and reliability of elections.

14. In the course of my law enforcement career, I have investigated several cases involving allegations of vote fraud in South Carolina, including allegations of absentee voting fraud. Vote fraud allegations come in various forms, and, in my experience, fraud allegations arising out of absentee voting are by far the most prevalent type of vote fraud allegations SLED is asked to investigate.

15. In the last five to ten years, I have been involved in the investigation of 10 – 15 cases involving vote fraud allegations, almost all of which have arisen out of absentee voting. It is my understanding that SLED has investigated numerous others over the year.

16. In fact, I am currently conducting and/or supervising three (3) ongoing SLED investigations into allegations of fraudulent absentee voting arising out of the June 2020 South Carolina primary.

17. I have provided below a summary of several illustrative South Carolina absentee vote fraud cases investigated by the FBI, SLED and local authorities in the course of my career.

- *United States v. Carmichael*, 685 F.2d 903 (4th Cir. 1982); *United States v. Mason*, 673 F.2d 737 (4th Cir. 1982). SLED and the FBI jointly investigated allegations of absentee vote fraud in Dillon County. State Senator Albert Eugene Carmichael, Sheriff Roy Lee, and five other persons—Joe Grady Flowers, Mazel J. Arnette, Alan Schafer, Luther Nance, and Booker T. Mason—were convicted of vote buying in connection with the 1980 Democratic primary election in Dillon County. This case led to new, stricter witness requirements for absentee voting in South Carolina.

- Judgment, *United States v. Wiggleton*, No. 8:99-cr-00882 (D.S.C. Aug. 1, 2000). Georgetta M. Wiggleton, the Clerk of the McCormick County Board of Voter Registration, was convicted of absentee vote fraud in connection with the November 1994 general election.

- *State v. Chris Campbell.* Eastover Mayor Chris Campbell was convicted in 2008 of election related forgery and misconduct in office after being accused of forging absentee ballots and requiring others to sign as witnesses for absentee ballots they did not see filled out. (https://www.wltx.com/article/news/the-verdict-is-in-for-eastover-fraud-trial/101-381459579)

- *Lancaster City Council Election (2016).* Incumbent City Council member Jackie Harris accused opponent Linda Blackmon of election fraud including, among other allegations, absentee ballot fraud. This case received significant media attention. No charges were filed. (https://www.thelancasternews.com/content/harris-appeals-vote-fraud-ruling)

18. In nearly every absentee vote fraud case SLED has investigated during my career (including the three (3) ongoing investigations mentioned above), the witness requirement for absentee ballots has provided SLED with an investigative lead because it identifies a potential witness to pursue and interview. The goal of every investigation is to determine the truth, and witness testimony is crucial in virtually every criminal investigation.

19. Persons witnessing an absentee voter marking his/her ballot can and often do provide critical information such as who voted, when they voted, where they voted, who else was present (if anyone), and whether coercion, undue influence or bribery was involved, etc.

20. The absence of the witness requirement for absentee voting would eliminate even the possibility of identifying and interviewing a witness with first-hand knowledge of the circumstances surrounding a particular ballot, thus making absentee vote fraud easier to carry out and harder to detect.

21. In addition to hindering law enforcement's legitimate interest in detecting vote fraud, the absence of the witness requirement would make it easier for an unscrupulous person to cast or assist someone in casting an unlawful absentee ballot, coerce an absentee voter, bribe an absentee voter, or otherwise violate South Carolina's election laws.

22. The witness requirement has the potential to deter fraud and other misconduct because it forces a potential bad actor (voter or witness or third party) to think twice before committing absentee ballot fraud because he/she must consider the possibility that their misconduct will be revealed by the another person present at or near the time the ballot is voted. Even if a supposed voter and a supposed witness have conspired to commit absentee voting fraud, each knows in advance that there is a potential witness who can turn on them and implicate them in a crime. Thus, the witness requirement serves as a deterrent to absentee voting fraud.

23. There is no requirement in South Carolina that a person witnessing the absentee vote be related to or even know the absentee voter. Even when the witness does not know the absentee voter, however, the witness is still able to provide critical information to law enforcement about the voter such as his/her physical description, the place in which the voter marked the ballot, who else was present (if anyone), whether campaign-affiliated personnel was present, what was said by those present, and other circumstances surrounding the vote.

24. In some situations, a witness signing an absentee ballot return-mail envelope may intentionally or accidentally include an incorrect address. In this situation, the witness requirement provides a critical investigative tool for law enforcement because investigators can interview individuals associated with or living near the incorrect/false address to try to locate the witness and interview him/her. So, even a "bad address" submitted by the witness is an important lead in some cases.

25. The fact that there is no requirement in South Carolina that election officials verify an absentee witness's signature by comparing it to voter registration signatures in no way diminishes the importance of the witness's signature as an investigative tool for law

enforcement. Law enforcement's task of investigating allegations of vote fraud is wholly separate from the ballot-counting activities that election officials are tasked with doing. Simply put, even if election officials do not rely on a witness's signature when doing their job of counting votes, this does not undercut the vital role that the witness's signature plays when law enforcement does its job with respect to protecting the integrity of the electoral process.

FURTHER AFFIANT SAYETH NOT.

_____
Lansing R. (Pete) Logan

Date: 9/22/20

STATE OF SOUTH CAROLINA
COUNTY OF RICHLAND

  I certify that the following person personally appeared before me this 22nd day of September, acknowledging to me that he voluntarily signed the foregoing document for the purpose stated therein and in the capacity indicated:

_____
Official Signature of Notary
NOTARY PUBLC FOR SOUTH CAROLINA

_Elizabeth Desmond_
Notary Public's Printed or Typed Name

My commission expires: 2/24/2030

**BALLOTS HEREIN**



EXHIBIT A

_____
**NAME**

_____
**ADDRESS**

_____

## Voters Oath

I hereby swear (or affirm) that I am duly qualified to vote at this election according to the Constitution of the State of South Carolina; that I have not voted during this election; and that the ballot or ballots with which this oath is enclosed is my ballot and that I have received no assistance in voting my ballot that I would not have been entitled to receive had I voted in person.

................................................................................
**Signature of Voter**

Dated this .......................... day of .................................., 20..........

................................................................................
**Signature of Witness**

................................................................................
**Address of Witness**



EXHIBIT B